Bernard SIEGEL and Liela Siegel, d/b/a Cap Connection, Plaintiffs-Respondents,

v.

LEER, INC., a foreign corporation, Defendant-Appellant.

Court of Appeals

*No. 90–0019–FT. Submitted on briefs April 9, 1990.—Decided May 9, 1990.*

(Also reported in 457 N.W.2d 533.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael J. Gross* of *Bode, Gross & Carroll* of Waukesha.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *William A. Jennaro* and *Michele M. Ford* of *Cooke & Franke, S.C.* of Milwaukee.

Before Nettesheim, P.J., Scott and Brown, JJ.

NETTESHEIM, P.J.   Leer, Inc. (Leer) appeals from a judgment awarding Bernard Siegel and Liela Siegel, d/b/a Cap Connection (Cap), actual attorney's fees pursuant to sec. 135.06, Stats., of the Wisconsin Fair Dealership Law (WFDL). Leer argues that the circuit court should not have awarded attorney's fees because Cap prematurely commenced this action for injunctive relief under the WFDL. Leer also contends that the issue of whether its business relationship with Cap was truly a dealership was never fully litigated before the circuit court. Finally, Leer challenges the necessity and reasonableness of the fees. We affirm the trial court's award of the fees. We also allow Cap's request for appellate attorney's fees and remand for a determination of such fees.

## FACTS AND PROCEDURAL HISTORY

Leer manufactures pick-up truck caps. Cap sells pick-up truck caps on consignment to automotive deal-

ers in the Waukesha, Wisconsin area. In April, 1988, Cap and Leer struck an oral agreement whereby Cap became the Waukesha area dealer for Leer. Pursuant to this agreement, Cap purchased Leer truck caps, valued at $37,000, as initial stock inventory. Cap, with Leer's permission, imprinted business cards with Leer's logo and also purchased and displayed Leer's logo on Cap's premises. In anticipation of the Leer sales, Cap purchased approximately $1,000 of equipment and hired an additional employee.

During the course of their business relationship, Leer provided Cap with brochures, guarantees and literature for distribution to customers and potential customers. Cap also replaced defective and broken Leer parts with replacement parts provided by Leer.

From May, 1988 to August, 1989, Cap expended between $1,500 and $2,000 in advertising the sale of Leer caps. From May through December, 1988, Cap's sales of Leer caps approximated $125,000. As of August, 1989, Cap's 1989 purchases of Leer caps approximated $57,000.

In mid-July, 1989, Leer's territory manager telephoned Cap's general manager and advised that Leer would be terminating Cap as a Leer dealer effective August 17, 1989. Cap answered with a letter from its attorney advising that the notice of termination violated sec. 135.04, Stats., of the WFDL. Leer responded by letter stating that it would substantively reply on August 18, the day after the termination was to take effect.[1]

---

[1] The actual letters from Siegel's attorney to Leer and vice versa are not in the appellate record. However, this exchange was recited by Leer's attorney in proceedings before the trial court on August 8 and August 18, 1989, and are repeated by both parties in their appellate briefs. We therefore accept this history as fact.

Cap replied with this lawsuit alleging an unlawful termination of the dealership and requesting a temporary and permanent injunction and its actual attorney's fees. The hearing on Cap's motion for a temporary restraining order came on for hearing on August 9, 1989—before the time deadline for Leer's answer. At this hearing, the parties agreed to continue the matter to August 18, representing to the trial court that a settlement was possible. No temporary injunction was issued.

At the August 18, 1989, adjourned hearing, the parties reported to the trial court that Leer had abandoned its plan to terminate its business relationship with Cap. The parties also agreed that the only remaining issue was whether Cap was entitled to its attorney's fees and, if so, the amount. The parties further agreed that this issue would be addressed in briefs to be filed with the court.

After this hearing, but before the briefs were filed, Leer filed its answer which admitted the essential facts of Cap's complaint but which denied that its relationship with Cap was a dealership governed by the WFDL. The trial court determined that a dealership existed, that Leer had violated the notice of termination provisions of sec. 135.04, Stats., and that Cap was entitled to its reasonable actual attorney's fees in the amount of $4479.24. Leer appeals.

## CAP'S ENTITLEMENT TO ATTORNEY'S FEES

Leer first argues that the award of attorney's fees to Cap was improper because Cap prematurely commenced this action. We disagree.

Section 135.06, Stats., provides:

**Action for damages and injunctive relief.** If any grantor violates this chapter, a dealer may bring an

action against such grantor in any court of competent jurisdiction for damages sustained by him as a consequence of the grantor's violation, together with the actual costs of the action, including reasonable actual attorney fees, and the dealer also may be granted injunctive relief against unlawful termination, cancellation, nonrenewal or substantial change of competitive circumstances.

In addition, sec. 135.065, Stats., provides:

**Temporary injunctions.** In any action brought by a dealer against a grantor under this chapter, any violation of this chapter by the grantor is deemed an irreparable injury to the dealer for determining if a temporary injunction should be issued.

Leer reasons that Cap's commencement of this action was premature because "there was no justiciable controversy between these parties at the time the action was filed." We disagree. The plain import of the above statutes is to vest a dealer with the right to commence a WFDL action once a grantor violation has occurred. *Lindevig v. Dairy Equip. Co.,* 150 Wis. 2d 731, 736, 442 N.W.2d 504, 506 (Ct. App. 1989). Section 135.065, Stats., specifically recognizes that a grantor violation can trigger the need for a temporary injunction—part of the relief which Cap sought. A dealer is not required to await the visitation of actual injury before a WFDL action is recognized. *Les Moise, Inc. v. Rossignol Ski Co.,* 122 Wis. 2d 51, 61, 361 N.W.2d 653, 658 (1985). When defective notice of termination is given, the WFDL affords relief—even temporary relief—without a showing of actual injury. *Id.*

Thus, when Leer attempted to terminate its business relationship with Cap in violation of the termina-

tion requirements of sec. 135.04, Stats., Cap was entitled to pursue a cause of action—including a request for temporary injunctive relief—pursuant to the WFDL.

Next, Leer contends that the issue of whether a dealership truly existed was never fully litigated. True, a formal full-blown trial never occurred in this case. But this was because Leer agreed to halt its termination plan. When the parties reported this "settlement" to the trial court on August 18, 1989, both Cap *and Leer* agreed that the only remaining issue was whether Cap was entitled to its attorney's fees pursuant to sec. 135.06, Stats. Cap *and Leer* further agreed that this question would be addressed by the parties' briefs without an evidentiary hearing. A party will not be heard to maintain a position on appeal inconsistent with that taken in the trial court. *State v. Washington,* 142 Wis. 2d 630, 635, 419 N.W.2d 275, 277 (Ct. App. 1987). Thus, Leer is judicially estopped from arguing on appeal that the procedure in the trial court was deficient.

Next, Leer contends that the trial court erred in determining that the parties' relationship was a dealership under the WFDL. Since this concerns statutory construction, it presents a question of law. *State v. Pham,* 137 Wis. 2d 31, 34, 403 N.W.2d 35, 36 (1987). We review such determinations de novo without deference to the ruling of the trial court. *Id.*

"Dealership" pursuant to sec. 135.02(3), Stats., is defined as follows:

> "Dealership" means a contract or agreement, either express or implied, whether oral or written, between 2 or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype,

628

advertising or other commercial symbol, in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise.

Leer does not dispute the facts of this case as earlier recited and as relied upon by the trial court in reaching its conclusion that a dealership existed between the parties. Leer and Cap clearly established a business relationship premised upon a community of interest in the offering, selling and distributing of Leer's pick-up truck caps. Cap was given the right to sell or distribute the caps together and to use Leer's logo and advertising materials. These facts well support the trial court's conclusion that a dealership existed.

Leer complains, however, that the trial court ignored Leer's answer denying that the WFDL applied to the parties' relationship. We first note that the trial court was not obliged to accept Leer's legal conclusion in its answer that the relationship between the parties was not subject to the WFDL. Moreover, the trial court did expressly allude to Leer's answer in its written decision, citing Leer's admission that the parties entered into an agreement whereby Cap would sell Leer's truck caps.

We conclude that the trial court considered all the relevant evidence on this question. None of the court's factual findings is clearly erroneous. *See* sec. 805.17(2), Stats. Leer does not dispute that its termination notice was defective if measured pursuant to the dealership statutes. The trial court's legal conclusion that a dealership existed was correct. Thus, Cap was entitled to its reasonable actual attorney's fees pursuant to sec. 135.06, Stats.

Leer also complains that the trial court's award of attorney's fees violates public policy because it penalizes

629

Leer for settling the case. Leer contends that the trial court action here is akin to that recently condemned by the supreme court in *State ex rel. Collins v. American Family Mut Ins. Co.,* 153 Wis. 2d 477, 451 N.W.2d 429 (1990). There, the supreme court struck down as contrary to public policy a trial court procedure that required the parties to either "stipulate" to a substantial fine for reaching an "eleventh hour" settlement or accept a delayed trial date "stacked" with other trials.

This case is readily distinguished from *Collins.* Here, we deal with an express statutory right of a dealer to recover for a grantor's violation of the WFDL. The failure to protect and enforce such right would fly in the face of the statutory purpose. No such equivalent right, statutory or otherwise, was at stake in *Collins.*

## REASONABLENESS OF ATTORNEY'S FEES

Leer next challenges the reasonableness of the $4479.24 attorney's fees awarded to Cap. The reasonableness of an attorney's fee is one of those rare questions of law to which we give weight to the trial court's determination. *Nelson v. Machut,* 138 Wis. 2d 301, 305, 405 N.W.2d 776, 778 (Ct. App. 1987).

> We believe that the trial court is in an advantageous position to make a determination as to the reasonableness of a firm's rates . . ..
>
> [The trial judge] has observed the quality of the services rendered and has access to the file in the case to see all of the work which has gone into the action from its inception. He has the expertise to evaluate the reasonableness of the fees with regard to the services rendered.

*Id.* (quoting *Standard Theatres v. DOT,* 118 Wis. 2d 730, 747, 349 N.W.2d 661, 671 (1984).

Factors to consider as guides when determining the reasonableness of an attorney's fee include: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent. *Standard Theatres,* 118 Wis. 2d at 749–50 n.9, 349 N.W.2d at 672.

In awarding the fees, the trial court observed that Cap had provided "detailed accounts of the counsel's activities and costs," that none of Cap's counsel's actions were superfluous, and that the rate charged was comparable to other firms similar to Cap's counsel's firm. On appeal, Leer does not challenge any of these statements. Instead, Leer argues only that "there appears to have been an inordinate amount of time in research and drafting." The trial court did not expressly address this complaint. However, if the trial court fails to set forth its reasoning when exercising its discretion, we may search the record and sustain the trial court's decision if there is a reasonable basis for it. *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512, 520 (1971). We choose to do so here.

Our examination of Cap's counsel's itemized statement reveals that much of the billed time was indeed devoted to research and drafting. We do not conclude, however, that this was "inordinate." The WFDL is still relatively new and the case law is still evolving. Therefore, thorough research and careful draftsmanship in this novel and potentially complex area is the mark of quality—not inordinate—lawyering. It is reasonable for a lawyer to conclude that the fate of a case might hinge in large measure on the quality of the pleadings and the briefs. That this case was ultimately "settled" when Leer abandoned its termination plan does not serve to render Cap's counsel's efforts unnecessary.

Based upon the reasons stated by the trial court and our additional conclusion that Cap's counsel's services were necessary to an effective representation of Cap's interests, we conclude that the attorney's fee award was proper.

## APPELLATE ATTORNEY'S FEES

Cap also requests that we award it appellate attorney's fees pursuant to sec. 135.06, Stats. Cap contends that the "actual costs of the action" language in the statute includes appellate attorney's fees. We agree.

In *Shands v. Castrovinci,* 115 Wis. 2d 352, 340 N.W.2d 506 (1983), the supreme court ruled that a tenant's right to recover reasonable attorney's fees pursuant to sec. 100.20(5), Stats., for violations of administrative regulations included appellate attorney's fees. The court reasoned that tenant Shands was not made whole until she had recovered her damages and attorney's fees on appeal. *Shands,* 115 Wis. 2d at 359, 340 N.W.2d at 509. This included the defense of a favorable trial court deci-

sion or the prosecution of an adverse decision in the appellate forum. *Id.*

We conclude that the same logic applies here. Cap is not made whole here until its damages and attorney's fees have been successfully litigated to conclusion. If attorney's fees are not recoverable on appeal, the purpose behind the statute could be frustrated by the grantor simply taking an expedient appeal. *See id.* We therefore conclude that Cap is entitled to its reasonable actual attorney's fees for this appeal. We remand with directions for the trial court to make this determination.

*By the Court.*—Judgment affirmed and cause remanded with directions.