991 F.2d 1243
 25 Fed.R.Serv.3d 1000
 DeWITT, PORTER, HUGGETT, SCHUMACHER & MORGAN, S.C.,
Plaintiff-Third/Party Defendant-Appellee,
v.
Robert J. KOVALIC, Defendant-Third/Party Plaintiff-Appellant,
v.
Fred GANTS and Continental Casualty Company, doing business
as CNA, Third/Party Defendants-Appellees.
 No. 92-2941.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 16, 1993.
Decided April 13, 1993.
 
 Craig A. Kubiak, Terry E. Johnson (argued), Peterson, Johnson & Murray, Milwaukee, WI, Stephen Hurley, Hurley, Burish & Milliken, Madison, WI, for DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.
 Robert J. Gingras (argued), Wendy A. Williams, Gingras Law Office, Madison, WI, for Robert J. Kovalic.
 Craig A. Kubiak, Terry E. Johnson, Peterson, Johnson & Murray, Milwaukee, WI, for Fred Gants and Continental Cas. Co.
 Before BAUER, Chief Judge, FLAUM, Circuit Judge, and WILL, Senior District Judge.*
 BAUER, Chief Judge.
 
 
 1
 In this appeal, a disgruntled client asks us to referee a fee dispute with his lawyers. A jury determined that the lawyers are entitled to $230,000. In response to post-trial motions, the district court granted Kovalic's motion for an order to amend the judgment, and the law firm accepted a remittitur reducing the award to $150,000. The court refused to otherwise alter the jury's verdict. On appeal, the client contends that the trial was not fair and that his contract with the law firm is unenforceable because the fees are clearly excessive and unreasonable.
 
 I. Background
 
 2
 John Kovalic hired DeWitt, Porter, Huggett, Schumacher & Morgan, S.C. ("DeWitt, Porter" or "the firm"), to represent him on an hourly basis in an age discrimination suit against his former employer. As the bills mounted and Kovalic's payments stopped, DeWitt, Porter asked Kovalic to sign a note and mortgage on his home in England as security for the unpaid fees. Kovalic refused. When the case dragged into its fifth year, and the firm sent several letters requesting payment and security, Kovalic conveyed his home in England to his wife. At the same time, he and his wife conveyed a house they owned in Wisconsin to their children. Neither conveyance was supported by adequate consideration. Ultimately, Kovalic lost his age discrimination suit.
 
 
 3
 The firm brought this breach of contract action to collect its fees. The firm also claimed that the property transfers were fraudulent conveyances under Wisconsin law. Kovalic removed the suit to federal court, basing jurisdiction on diversity of citizenship. 28 U.S.C. § 1332. Kovalic then filed a third-party complaint against the firm and Fred Gants, the attorney who worked on his case, for legal malpractice and negligent infliction of emotional distress. The trial court bifurcated the trial of Kovalic's negligent infliction of emotional distress claim, but the rest of the claims (DeWitt, Porter's fee and fraudulent conveyance claims, and Kovalic's legal malpractice claim) were tried together. After a week-long trial, the jury determined that Kovalic owed the firm $230,000, and that the conveyances were fraudulent. The jury also found that DeWitt, Porter and Gants were not negligent in their representation. The firm accepted a remittitur; Kovalic's other post-trial motions were denied.
 
 II. Analysis
 
 4
 Kovalic claims that his trial was unfair because the district court refused to bifurcate DeWitt, Porter's fraudulent conveyance claim. He also claims that his contract with DeWitt, Porter is unenforceable because it provides for "clearly excessive and unreasonable fees." Appellant's Brief at 20. We shall consider each claim in turn.
 
 A. Bifurcation
 
 5
 Federal Rule of Civil Procedure 42(b) permits the separate trial of any issue when separation would be "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy...." MCI Communications v. American Tel. & Tel. Co., 708 F.2d 1081, 1166 (7th Cir.1983). Only one of these criteria need be satisfied for a court to order a separate trial. Id. We review a district court's bifurcation decisions for an abuse of discretion. Barr Laboratories, Inc. v. Abbott Laboratories, 978 F.2d 98, 105 (3d Cir.1992).
 
 
 6
 DeWitt, Porter's suit for fees included a claim that Kovalic's transfers of certain properties were fraudulent conveyances under Wisconsin law. Wis.Stat.Ann. § 242.05 (West Supp.1992). Wisconsin has adopted the Uniform Fraudulent Transfer Act ("UFTA" or "the Act"). Under the Act, a transfer is fraudulent as to existing creditors "if the debtor made the transfer ... without receiving a reasonably equivalent value in exchange for the transfer ... and the debtor was insolvent at the time or became insolvent as a result of the transfer...." Id. A creditor is a person with a claim; a claim is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed [or] undisputed...." Id. at § 242.01(3), (4). A debtor is insolvent if his debts are greater than his assets. Id. at 242.02(2).
 
 
 7
 A plaintiff-creditor does not have to prove that the debtor intended to defraud her in a fraudulent conveyance action under § 242.05. See Record Document ("R.Doc.") 242 at 339. DeWitt, Porter only was required to show that Kovalic transferred property without consideration, and that he was insolvent when the transfers were made or was rendered insolvent by them. Kovalic conceded that the unpaid fees exceeded his total assets (his insolvency), see Reply Brief at 3, and that the transfers were made without consideration. R.Doc. 211 at 260. Because of the statutory definition of fraudulent conveyance, Kovalic's contention that he transferred the properties because of his precarious health, rather than to avoid Dewitt, Porter's collection efforts, is irrelevant.
 
 
 8
 Kovalic filed a one-sentence motion to bifurcate DeWitt, Porter's fraudulent conveyance claim on January 22, 1992. R.Doc. 137. The motion stated only that Kovalic "hereby move[s] the Court for an order bifurcating the trial of plaintiff's fraudulent conveyance claim until the plaintiff establishes liability for the alleged debt as against the defendant Robert J. Kovalic." Id. The motion provided no procedural rule, case law, or argument in support. DeWitt, Porter opposed the motion, and explained (with citation to authority) that a judgment on the firm's claim for fees was not a legal prerequisite for the fraudulent conveyance claim. Response to Defendant Third-Party Plaintiff's Motion for Bifurcation, R.Doc. 145. At oral argument on the motion, Kovalic's counsel stated simply that "it would be prejudicial for a jury to hear that kind of evidence prior to an actual debt or judgment being entered against the Kovalics...." Transcript of Hearing of 1/31/92, R.Doc.[1] 237 at 25. The court acknowledged that the only support for Kovalic's motion was his general statement that a joint trial would be prejudicial. The court stated that it was unaware of any "actual" or "unfair" prejudice that would occur without bifurcation, and ruled that bifurcation would be a "waste of time...." Id.
 
 
 9
 We do not believe the district court abused its discretion. Kovalic failed to provide any meaningful support for his motion below, and we cannot find that a court abused its discretion in denying an unsupported motion. We believe the trial court's evaluation as to the minimal prejudice the joint trial might create was correct.
 
 
 10
 Kovalic's brief to this court on this issue is as well supported as was his motion to the district court. His contention that the district court improperly allowed DeWitt, Porter "to introduce evidence of fraudulent conveyance to avoid a debt before the debt was ever established," misapprehends Wisconsin law. Under the UFTA, rights to payment, even if disputed, are claims, entitling creditors to challenge an insolvent debtor's transfer of property. Wis.Stat.Ann. § 242.01(3). The statute does not support Kovalic's belief that trying the fraudulent conveyance claim together with the claim for fees "allowed the cart to go before the horse." Appellant's Brief at 19.
 
 
 11
 Kovalic complains about two statements made by DeWitt, Porter's attorney's during opening statement. These statements so inflamed the jury, he contends, that its verdict was "perverse." Id. at 18. These brief statements occupy less than a page in a twenty-three page opening statement, R.Doc. 238 at 4, 22:The second claim arises because after the Court of Appeals took away the verdict which Mr. Gants had won for Mr. Kovalic, you will hear that Mr. Kovalic, without telling his lawyers, transferred his principal assets into the names of his wife and two children so that he would become insolvent, what lawyers call judgment-proof, so that the second determination which you'll be asked to make is whether he made such fraudulent transfers of his property.
 
 
 12
 * * * * * *
 
 
 13
 And then you're going to hear that in mid April about two weeks or so after the Court of Appeals' decision, unbeknown to DeWitt, Porter, Mr. Kovalic began to transfer his assets. You'll hear he had four major assets, those being the four homes. Three were in his name, the home in Shrewsbury, England, which was worth about 150 to 170,000 pounds, a house here in Madison worth $40,000, a house in Pennsylvania worth $20,000, and there was another house in England in his wife's name.
 
 
 14
 The district court evaluated Kovalic's allegations of prejudice after trial. DeWitt, Porter, Huggett, Schumacher & Morgan, S.C. v. Kovalic, No. 91-C-714-2 Memorandum & Order, slip. op. (W.D.Wis.1992) ("Memorandum & Order"). It found that any difficulty the jury might have encountered in calmly reviewing the evidence was caused by Kovalic's "baseless" accusations against DeWitt, Porter. Id. at 6-7.
 
 
 15
 We are inclined to agree. Certainly neither of the cited statements is so inflammatory that the jury's determination on the merits of any of the issues is questionable. In his Reply Brief, Kovalic contends that "[t]he determination of what is substantially prejudicial is simple--you know it when you see it." Reply Brief at 7. Although we are a bit sceptical of this standard for evaluating the significance of potentially prejudicial material, we will take Kovalic at his word. We cannot find any "inflammatory" or unduly prejudicial statements in the record. Other statements to which Kovalic objects did not refer to the fraudulent conveyance claim, but to Kovalic's third-party claim against the firm for professional negligence. See R.Doc. 243 at 93-97. Kovalic cannot use statements made in reference to his negligence claim to support his argument that the fraudulent conveyance claim should have been bifurcated.
 
 
 16
 In addition to his objections to DeWitt, Porter's arguments at trial, Kovalic bolsters his claim for bifurcation with a single 1940 decision. He states that this case holds that fraudulent transfer claims should not be tried to a jury. Elkins v. Noble, 1 F.R.D. 357, 358 (E.D.N.Y.1940). This case not only does not support Kovalic's position, it contradicts it. In a one page order, the court ruled:
 
 
 17
 The inclusion in the complaint of a fraudulent transfer cause of action does not deprive the defendants of their right to a trial by jury as to the other causes of action. However, there need not be two trials. The defendants will not be prejudiced by one trial as the evidence relating to all the causes of action is practically the same.
 
 
 18
 Id. The Elkins order mirrors the district court's ruling on the subject. Once again, Kovalic's argument simply fails to support his claim that "the introduction of this evidence caused the jury's verdict to be perverse." Appellant's Brief at 18. "[E]xtravagant characterizations are no substitute for careful analysis...." Parham v. J.R., 442 U.S. 584, 614, 99 S.Ct. 2493, 2510, 61 L.Ed.2d 101 (1979), and extravagant characterizations are all Kovalic has provided to support his allegation that the district court abused its discretion in refusing to bifurcate the trial. These are not sufficient.
 
 B. Fees
 
 19
 Kovalic also claims that the fees DeWitt, Porter charged were so excessive and unreasonable that his contract to pay them is unenforceable. He raised this claim in the district court in his post-trial motions. R.Docs. 198, 199. The jury also considered the issue. The jury was asked whether Kovalic breached a contract to pay legal fees to DeWitt, Porter, and if so to determine the amount of money due the firm. Special Verdict, R.Doc. 194. The jury was instructed to award an amount that would "reasonably compensate" the firm. R.Doc. 243 at 122. The jury was also given the appropriate criteria for evaluating the fees charged:
 
 
 20
 In determining the amount of compensation to which an attorney is entitled for such services as he or she rendered on behalf of a client, you may take into consideration the time spent by him or her in the performance of his or her work, the difficulties involved therein, the results obtained for the client together with his or her reputation in his or her profession for learning, skill, ability and integrity and whether there is a fixed or contingency fee arrangement. You may also take into consideration amounts customarily charged in this community for similar services.
 
 
 21
 Id. See Milwaukee Rescue Mission, Inc. v. Redevelopment Authority, 468 N.W.2d 663, 674 n. 14 (Wis.1991) (setting out appropriate criteria). Kovalic asks us to reject the jury's determination that the fees were reasonable, and to use our inherent power to determine the reasonableness of attorney fees to relieve him of his contractual obligation to DeWitt, Porter. Pfeifer, v. Sentry Ins., 745 F.Supp. 1434, 1443 (E.D.Wis.1990); Herro, McAndrews & Porter, S.C. v. Gerhardt, 214 N.W.2d 401 (1974). He made the same request of the district court. After it reviewed the evidence it denied the invitation, but reduced the jury's award, and DeWitt accepted a remittitur reducing the award to $150,000.
 
 
 22
 We accord great deference to a jury's decision, particularly if it was affected by issues of credibility. McMath v. City of Gary, 976 F.2d 1026, 1032 (7th Cir.1992). "[A] jury verdict will not be set aside if a reasonable basis exists in the record to support that verdict." Id. (citing Kush & Assocs., Ltd. v. American States Ins. Co., 927 F.2d 929, 934 (7th Cir.1991)). We accord similar deference to a district court's determination of the appropriateness of legal fees. In Wisconsin, whose policies Kovalic has asked us to apply, district court determinations on fees are reviewed for an abuse of discretion because they are based upon findings of fact. Milwaukee Rescue Mission, Inc. v. Redevelopment Authority, 161 Wis.2d 472, 468 N.W.2d 663, 672 (1991); State Bank of Hartland v. Arndt, 129 Wis.2d 411, 385 N.W.2d 219, 224 (App.1986).
 
 
 23
 The reasonableness of the fees depends upon the representation DeWitt, Porter provided. Kovalic retained the firm to represent him in an age discrimination action against his former employer, D.E.C., International ("D.E.C."). Kovalic contacted DeWitt, Porter in 1986 shortly after D.E.C. fired him. After two meetings, Kovalic retained DeWitt, Porter. The firm refused to take the case on a contingency basis. One attorney, Fred Gants, was to receive $95.00 per hour for his services; the other, Pamela Anderson, was to receive $75.00. Gants sent a letter to Kovalic confirming these arrangements in September 1986. Gants explained to Kovalic that because he lacked direct evidence of discrimination, they would have to use a burden-shifting, indirect method of proof.
 
 
 24
 D.E.C. retained the firm of Foley & Lardner, and the firm defended D.E.C. tenaciously. DeWitt, Porter filed separate actions in both federal and state court. Kovalic's motion for voluntary dismissal of the federal action was granted (DeWitt, Porter concluded their chances of success were higher in state court). D.E.C. unsuccessfully appealed the dismissal to this court. After trial in state court, a jury awarded Kovalic $700,000 in damages, but the trial judge granted D.E.C.'s post-trial motion for a new trial. Kovalic appealed this order, and the state court of appeals reversed the verdict entirely. It found Kovalic failed to show any link between D.E.C.'s allegedly pretextual reasons for firing him and a discriminatory intent. Kovalic appealed that decision to the Wisconsin Supreme Court, which denied review. Kovalic wished to petition the United States Supreme Court for review, but DeWitt, Porter withdrew from the case and advised him to retain another firm to handle the petition. Kovalic did not file a petition for a writ of certiorari.
 
 
 25
 The D.E.C. litigation lasted five years. Kovalic received monthly bills, and made payments for a while. Through the trial and post-trial motions in 1989, Kovalic paid DeWitt, Porter $120,000 in fees without dispute. In December 1989, after the trial, and during the pendency of the appeals, Kovalic made his final payment. In March 1990, DeWitt, Porter contacted Kovalic about the unpaid fees, but despite negotiations, no payments were forthcoming. Kovalic had paid no fees since 1989, and his outstanding balance was $220,000. The jury in this case awarded that amount, but because Dewitt, Porter accepted a remittitur, reducing the award to $150,000, we review the smaller figure.
 
 
 26
 We must determine whether the fees DeWitt, Porter charged were reasonable for the services it rendered. As we evaluate this question, we bear in mind (1) that the firm bears the initial burden of proving the reasonableness of its fees; (2) that the jury and district court found the fees were reasonable; (3) that Kovalic did not find them unreasonable until after the state court of appeals reversed his jury award; and (4) the factors the Supreme Court of Wisconsin has adopted for evaluating the reasonableness of attorney fees. Milwaukee Rescue Mission, 468 N.W.2d at 674 n. 14; Herro, 214 N.W.2d at 403.
 
 
 27
 Kovalic's primary contention is that the firm spent too much time on his case: "the DeWitt firm overlawyered and overbilled this case." Appellant's Brief at 23. He does not contest, however, that D.E.C. fiercely defended the action, or contend that the firm's hourly rates were out of line. He also maintains that DeWitt is entitled to nothing further because he derived no pecuniary benefit from the case, and characterizes its importance as a "typical age discrimination case." Id. at 25. Kovalic made these arguments to the district court in his post-judgment motion. Memorandum & Order at 8-10. The district court reviewed the Herro criteria and the jury's verdict, and concluded that DeWitt, Porter is entitled to an additional $150,000 for its services. Id. at 10. This judgment is well-supported by the record, and we find no reason to disturb it. See Siegel v. Leer, Inc., 156 Wis.2d 621, 457 N.W.2d 533, 537-38 (App.1990).
 
 III.
 
 28
 For the foregoing reasons, the judgment of the district court is
 
 
 29
 AFFIRMED.
 
 
 
 *
 The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 The transcripts of hearings and trial in this case have been entered as record documents in the record on appeal prepared by the District Court. We shall refer to those numbers, rather than the Court of Appeals transcript volume numbers