IN RE the MARRIAGE OF: John M. JOHNSON, Jr., Appellant,

v.

Linda JOHNSON, Respondent.

Court of Appeals

*No. 90-0749. Oral argument July 10, 1990.—Decided July 31, 1990.*

(Also reported in 460 N.W.2d 166.)

■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■
■■■■■■■ ■■■■

On behalf of the appellant, the cause was submitted on the briefs and oral argument of *Dennis M. Burgy* of *Drager, O'Brien, Anderson, Burgy & Garbowicz* of Eagle River.

On behalf of the respondent, the cause was submitted on the brief and oral argument of *R. Terry Hoyt* of Minocqua.

On behalf of the guardian ad litem, the cause was submitted on the brief and oral argument of *Neal A. Nielsen III* of *Nielsen & Nielsen* of Eagle River.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. John M. Johnson, Jr., appeals a nonfinal order reopening a divorce judgment that had granted him custody of John M. Johnson III, a minor.[1] Linda Johnson, John's former wife, now contends that John is not John III's biological father. The trial court found that the parties, by their stipulation at the divorce hearing, had misrepresented the issue of paternity and therefore ordered the judgment reopened under sec. 806.07(1)(c), Stats., or alternatively under sec. 806.07(1)(h). We reverse because John III should have been represented by a guardian ad litem at the motion hearing on reopening the judgment. We also hold that the trial court abused its discretion by erroneously concluding that the law precluded considering factors other than whether fraud or misrepresentation were committed. We remand to allow the trial court to determine whether grounds exist for reopening the judgment and, if

---

[1]We granted leave to appeal by order dated May 16, 1990. Rule 809.50(3), Stats.

so, whether other more important factors should result in leaving the judgment undisturbed.

John and Linda were married in 1980 and divorced in 1988. Pursuant to a stipulation, John was awarded custody of the three minor children born during the marriage. The divorce judgment stated that the children had been born to the parties. Only John III is the subject of this appeal.

A little less than one year after the divorce, Linda filed a motion to reopen the judgment. She contends that T.B., not John, is John III's natural father. In support of her argument, she alleges that she was having an affair with T.B. at the time of John III's conception and that John has had a vasectomy, making it unlikely he could have fathered John III.[2]

John argued that there were no grounds to reopen the judgment on the basis of fraud. In particular, he pointed to six separate items of correspondence between the court and the parties prior to the divorce raising the issue of John III's parentage. Included is a letter signed by the trial court stating:

> In reviewing the file, I see no issue as to the paternity of the child. Mrs. Johnson has not denied the same in her pleadings and there are no pleadings that would put that matter at issue. Until the parties present this case appropriately for further Court intervention, I will let them decide as to how they wish to proceed.

At the post-judgment proceedings, the trial court, without referring to the correspondence, found that there had been a fraud perpetrated upon it and reopened the judgment. The trial court found "[t]here was misrepresenta-

---

[2]T.B. has had no role in any of the court proceedings and has denied paternity in a letter signed by his attorney.

tion as to the parentage of that child . . . the court wasn't made aware of the fact that Mr. Johnson possibly was not the father of the child for whatever reason."

John had initially proceeded pro se. Following the trial court's decision to reopen the judgment, he obtained counsel and moved the court to reconsider its previous ruling. The trial court held a hearing on John's motion, but again decided the judgment should be reopened. John III was not represented by a guardian ad litem at either hearing.

John appeals and argues that he committed no fraud or misrepresentation, that the trial court failed to consider John III's best interests and that a guardian ad litem should have been appointed earlier in the process. He is joined in the latter two arguments by the guardian ad litem, who was appointed after the hearings. We granted leave to appeal and agree that the order must be reversed.

We first turn to whether guardian ad litem involvement should have preceded the reopening of the judgment. John and the guardian ad litem rely on two statutes to establish John III's right to representation at the motion hearing on reopening the divorce judgment. Section 767.045(1), Stats., provides in part:

> In any action affecting the family in which the court has reason for special concern as to the future welfare of a minor child, in which the legal custody or physical placement of the child is contested, or in which paternity is contested under s. 891.39, the court shall appoint an attorney admitted to practice in this state as guardian ad litem to represent the interests of the child as to legal custody, support and periods of physical placement.

Section 891.39(1)(a), Stats., provides:

> Whenever it is established in an action or proceeding that a child was born to a woman while she was the lawful wife of a specified man, any party asserting in such action or proceeding that the husband was not the father of the child shall have the burden of proving that assertion by a clear and satisfactory preponderance of the evidence. In all such actions or proceedings the husband and the wife are competent to testify as witnesses to the facts. *The court or judge in such cases shall appoint a guardian ad litem to appear for and represent the child whose paternity is questioned.* (Emphasis added.)

We hold that these statutes required that John III be represented by a guardian ad litem at the motion hearings and that failure to appoint a guardian ad litem was error. Both statutes mandate the appointment of a guardian ad litem when paternity is questioned. Linda's pleadings put paternity directly at issue.

John also relies on a trio of mid-1970s cases holding that, in certain instances, failure to appoint a guardian ad litem sua sponte is error. *Bahr v. Galonski,* 80 Wis. 2d 72, 257 N.W.2d 869 (1977); *Bahr v. Bahr,* 72 Wis. 2d 145, 240 N.W.2d 162 (1975); and *de Montigny v. de Montigny,* 70 Wis. 2d 131, 233 N.W.2d 463 (1975). Representative of the cases discussing the guardian ad litem requirement is *Galonski,* which held that sec. 247.045, Stats. (now sec. 767.045, Stats.) required appointment of a guardian ad litem in a case altering visitation rights. The court rejected the argument that this type of proceeding was of only minimal importance when compared to custody disputes, which had been at the center of the earlier guardian ad litem cases.

> [T]he "special concern" test is not quantitative, but qualitative. That is, the court must look to the *nature* of the interests affected, rather than their *magnitude.*

> Thus this court recognized in *de Montigny* . . . that the appointment of a guardian *ad litem* is discretionary when the issues are only peripherally related to the children's welfare. Representation is obligatory, however, whenever the child's welfare is put directly in issue.

*Galonski,* 80 Wis. 2d at 82, 257 N.W.2d at 874 (emphasis in original). This case also raises special concerns under sec. 767.045(1), Stats., because the child's welfare is directly at issue. *See de Montigny,* 70 Wis. 2d at 137–38, 233 N.W.2d at 466–67. Disrupting an existing family unit directly implicates a child's welfare. The trial court may consider this and other factors affecting the child's welfare in making its discretionary determination under sec. 806.07, Stats.

■ Failure to appoint a guardian ad litem in a timely fashion was not harmless error. As John and the guardian ad litem correctly argue, determining whether to reopen the divorce judgment may go a long way toward determining the ultimate outcome of the case. It is not sufficient to appoint a guardian ad litem once the proceedings have been underway for a significant length of time. "[C]hildren are best served by the presence of a vigorous advocate free to investigate, consult with them at length, marshal evidence, and to subpoena and cross-examine witnesses." *Galonski,* 80 Wis. 2d at 83, 257 N.W.2d at 874. While we do not know whether the guardian ad litem could have added anything relevant on the issue of fraud and misrepresentation, he certainly could have provided information on other factors that either support or argue against reopening the judgment. Under these circumstances, failure to appoint a guardian ad litem in a timely fashion was an abuse of discretion, and that error was not harmless to John III's interests.

■ We also hold that the trial court's decision to reopen the judgment was an abuse of discretion, regardless of the resolution of the guardian ad litem issue. Section 806.07(1), Stats., provides in part:

> On motion and *upon such terms as are just,* the court *may* relieve a party or legal representative from a judgment, order or stipulation for the following reasons:
>
> . . ..
> (c) Fraud, misrepresentation or other misconduct of an adverse party.
>
> . . ..
> (h) Any other reasons justifying relief from the operation of the judgment. (Emphasis added.)

The decision to grant relief from a judgment is discretionary. *Mullen v. Coolong,* 153 Wis. 2d 401, 406, 451 N.W.2d 412, 414 (1990). That standard does not vest the court with completely unfettered decision-making power. *Marks v. Gohlke,* 149 Wis. 2d 750, 754, 439 N.W.2d 157, 158 (Ct. App. 1989). "The term 'discretion' contemplates a process of reasoning which depends on facts that are in the record or reasonably derived by inference from the record and yields a conclusion based on logic and founded on proper legal standards." *Mullen,* 153 Wis. 2d at 406, 451 N.W.2d at 414. Here, the trial court abused its discretion.

■ Regardless of whether the trial court's finding of fraud or misrepresentation was justified, it was error for the court to end its inquiry there. A court "may" relieve a party from a judgment "upon such terms as are just." Here the trial court reasoned that once it had identified what it believed to be a fraud on the court, reopening the judgment inevitably followed. We disagree. A finding

497

that there are grounds to reopen the judgment does not necessitate reopening it. As part of its exercise of discretion, the trial court may consider factors that would militate against granting relief. When a court refuses to exercise its power of discretion under the mistaken belief that such power did not exist, it is an error of law that eliminates any question of whether the trial court abused its discretion. *Paschong v. Hollenbeck,* 13 Wis. 2d 415, 422, 108 N.W.2d 668, 672 (1961).

We cannot alternatively affirm the trial court's decision under sec. 806.07(1)(h), Stats. The trial court stated "[t]he Court believes pursuant to sec. 806.07(1)(h) as well . . . that in the interests of justice this judgment needs to be reopened to make a determination as to who the father of the child is." As noted, it is an abuse of discretion to fail to apply the proper legal standards to the facts of the case. *Mullen,* 153 Wis. 2d at 406, 451 N.W.2d at 414. The court should properly have applied the factors for determining whether this was an "extraordinary circumstance" justifying reopening the judgment under subsec. (1)(h), rather than relying on a finding that reopening was in the interests of justice. Because the trial court failed to consider and make factual findings regarding the subsec. (1)(h) factors, we cannot uphold its decision.

On remand, the trial court should determine whether fraud or misrepresentation justifying relief exists under sec. 806.07(1)(c), Stats.[3] To justify relief under subsec. (1)(c), a party must show a "plain case" of misrepresentation. *Burmeister v. Vondrachek,* 86 Wis.

---

[3]On remand, the trial court should also consider whether the doctrines of equitable estoppel or laches operate to bar Linda's motion. *See A.M.N. v. A.J.N.,* 141 Wis. 2d 99, 105, 414 N.W.2d 68, 71 (Ct. App. 1987).

2d 650, 664, 273 N.W.2d 242, 248-49 (1979). We have serious reservations about whether the conduct here rises to the level of fraud or misrepresentation.[4] The trial court here was notified on numerous occasions that Linda had raised questions concerning John III's paternity. John himself brought this matter to the court's attention. The court notified the parties that it would abide by the presumption of paternity unless the issue was raised in the pleadings. Linda decided to stipulate to allowing John custody of the children. Nonetheless, the parties did stipulate that John was John III's father, an assertion, to be generous, of which they were unsure. We are unprepared to state as a matter of law that this statement could not constitute a misrepresentation. As stated earlier, should the trial court decide on remand that John's actions are grounds to reopen the judgment under subsec. (1)(c), it can still consider other factors in the proper exercise of its discretion and deny Linda relief.

If the trial court determines that no fraud or misrepresentation was committed, it may alternatively reopen the judgment based on sec. 806.07(1)(h), Stats., which allows relief from judgment in the event of "extraordinary circumstances." *See Nehls v. Nehls,* 151 Wis. 2d 516, 518-19, 444 N.W.2d 460, 461 (Ct. App. 1989). In

---

[4]Even if the parties' actions could be termed misrepresentation, it is hard to see how John's actions were more culpable than Linda's. Under the trial court's reasoning, it should have still inquired into whether the "clean hands" doctrine barred Linda from raising the fraud issue. *See Kenosha County v. Town of Paris,* 148 Wis. 2d 175, 188, 434 N.W.2d 801, 807 (Ct. App. 1988); *Westfair Corp. v. Kuelz,* 90 Wis. 2d 631, 637, 280 N.W.2d 364, 367 (Ct. App. 1979).

determining whether extraordinary circumstances exist, the trial court should consider

> whether the judgment was the result of a conscientious, deliberate and well-informed choice of the claimant; whether the claimant received the effective assistance of counsel; whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments; whether there is a meritorious defense to the claim; and whether there are intervening circumstances making it inequitable to grant relief.

*State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 552–53, 363 N.W.2d 419, 427 (1985).

*M.L.B.* does not mandate consideration of the child's best interests, but evidence relating to this factor will be highly relevant to "whether there are intervening circumstances making it inequitable to grant relief." *Mullen* goes as far as stating: "Subsection (h) gives the trial court broad discretionary authority and invokes the pure equity power of the court." *Id.* at 407, 451 N.W.2d at 414 (citing *M.L.B.*, 122 Wis. 2d at 544–45, 363 N.W.2d at 423). Therefore, under subsec. (1)(h), an evaluation of John III's best interests, as well as evidence on all the other applicable *M.L.B.* factors, should be considered.

John asks us to hold that the child's best interests is the sole consideration in deciding whether to reopen the judgment, citing *In re D.L.H.*, 142 Wis. 2d 606, 419 N.W.2d 283 (Ct. App. 1987). *D.L.H.* held that an inquiry into paternity is not always in the best interests of the child. *Id.* at 614, 419 N.W.2d at 286. *D.L.H.* does not mandate that the best interests test be used when deciding a motion under sec. 806.07. *D.L.H.* was decided under sec. 767.458(1m), Stats., which statute provides:

500

> In an action to establish the paternity of a child who was born to a woman while she was married, where a man other than the woman's husband alleges that he, not the husband, is the child's father, a party may allege that a judicial determination that a man other than the husband is the father is not in the best interest of the child. If the judge or court commissioner determines that a judicial determination of whether a man other than the husband is the father is not in the best interest of the child, no blood tests may be ordered and the action shall be dismissed.

Here, however, it is Linda, not the putative third-party father, raising the issue of John III's paternity. As such, by its clear language, sec. 767.458(1m) is inapplicable, and we cannot reach the public policy or legislative intent arguments advanced by John and the guardian ad litem.

Linda, on the other hand, argues that we do not even reach the question of the child's best interests unless it is found that both John and Linda are John III's natural parents. She cites *Barstad v. Frazier*, 118 Wis. 2d 549, 348 N.W.2d 479 (1984), for this proposition. *Barstad* applies to custodial disputes between natural parents and third parties and is not relevant to determining what standard is applicable in deciding whether it is appropriate to reopen a divorce judgment to determine whether the husband was in fact the biological father. We need not determine the extent of *Barstad's* holding; it is enough to state that *Barstad* does not come into play until after the court reopens the judgment under sec. 806.07, Stats.[5]

*By the Court.*—Order reversed and cause remanded.

[5]It is not clear if *Barstad* would be applicable even if this case

were a custody determination rather than a motion to reopen the judgment. *Barstad* determined that the best interests standard was not to be used in settling disputes between natural parents and third parties. *Id.* at 568-69, 348 N.W.2d at 489. John was Linda's husband when John III was born, raising a strong presumption of paternity. *See In re Schneider,* 150 Wis. 2d 286, 291, 441 N.W.2d 335, 337 (Ct. App. 1989). John has been John III's "parent" since birth and his sole custodial parent for almost two and one half years. We have some doubts as to whether John, even if found not to be John III's biological father, would stand in the shoes of a "third party," as that term is used in *Barstad.*