IN RE the MARRIAGE OF: Marvin STEINBACH, Petitioner-Appellant,

v.

Joyce GUSTAFSON, f/k/a Joyce Steinbach, Respondent-Respondent.

Court of Appeals

*No. 92–2162. Oral argument February 11, 1993.—Decided May 13, 1993.*

(Also reported in 502 N.W.2d 156.)

For the petitioner-appellant the cause was orally argued by and submitted on the brief of *Scott B. Rasmussen* of *Rasmussen Law Offices* of Beaver Dam.

For the respondent-respondent the cause was orally argued by and submitted on the brief of *Timothy J. Laux* of *Laux & Associates, S.C.,* of Osceola.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.   Marvin Steinbach and his wife, Joyce Gustafson, lived together for only a few weeks after their marriage. During their separation, Gustafson gave birth to a child and entered her surname on the

child's birth certificate, pursuant to sec. 69.14(1)(f)1.b, Stats., which allows the parent with either legal or "actual" custody of a child conceived during a valid marriage, but born after divorce or separation, to select the name to be entered on the certificate. In the judgment of divorce, the trial court directed that the child's name be changed to Steinbach but later reopened the judgment at Gustafson's request and vacated the language requiring the name change.

Steinbach appeals from the order reopening the judgment and from an order denying his motion for reconsideration. He argues: (1) that the trial court erred in concluding that Gustafson's motion to reopen the judgment was timely filed; (2) that the court exceeded its discretion in deciding to reopen; and (3) that sec. 69.14(1)(f)1.b, Stats., is a gender-specific statute favoring women and thus violates his right to equal protection of the law. We see no error in the court's order reopening the judgment, and we reject Steinbach's claim that sec. 69.14(1)(f)1.b is unconstitutional.

The facts are undisputed. Steinbach and Gustafson were married in 1989 and lived together for only a few weeks before they separated and Steinbach commenced this action for divorce. As indicated, during their brief time together, Gustafson became pregnant. Initially at least, Steinbach declined to acknowledge that he was the father of the unborn child, and a stipulated temporary order was entered providing, among other things, that "[c]ustody and physical placement of the minor child will remain open until the child is born, and until further hearing of the court." The child was born on February 23, 1990, and Gustafson listed the child's surname as "Gustafson" on the birth certificate.

Meanwhile, the divorce proceedings continued. At Steinbach's request, the trial court appointed a guard-

ian ad litem for the child on May 20, 1990, and ordered blood tests to determine paternity. On July 20, the family court commissioner entered a second temporary order stating, again pursuant to stipulation, that, pending further order, the parties would have "joint legal custody" of the child and that Gustafson "shall be the [child's] primary caretaker and her residence the primary home of the child."

The blood tests eventually revealed Steinbach to be the child's father and the case went to trial on January 18, 1991. The parties stipulated to joint custody, contesting only the child's physical placement. Steinbach also sought to have the surname on the child's birth certificate changed to his. The trial court rendered a decision from the bench ordering joint legal custody pursuant to the stipulation and directing physical placement of the child with Gustafson. Steinbach was granted visitation rights and was ordered to pay child support. The trial court also granted his request to have the child's name changed to Steinbach.

Several months later, on May 3, 1991, the trial court signed and entered written findings of fact, conclusions of law and judgment implementing its earlier oral decision. The court found that the child was a child of the marriage and that its name "shall be changed from . . . Gu[s]tafson to . . . Steinbach" and directed Steinbach to make the necessary arrangements.

Then, nearly a year later, on April 20, 1992, Gustafson moved to reopen and amend the judgment to delete the provision ordering the child's name to be changed. At about the same time, Steinbach filed a motion seeking to have Gustafson found in contempt for refusing to sign the necessary papers for the name change.

At a hearing on the motions, the trial court granted Gustafson's motion to reopen and, concluding that it lacked authority to order the child's name to be changed, vacated that portion of the earlier judgment.[1] Steinbach moved for reconsideration, which the court denied. He appeals both orders.

## I. Timeliness of the Motion To Reopen

Steinbach argues first that he was given insufficient notice of the hearing on Gustafson's motion to reopen the divorce judgment, in that it was served on him only six days prior to the hearing, rather than eight days in advance, as prescribed by statute, and he claims that the trial court erred in refusing to dismiss it.[2] The trial court, having received a trial brief on the name-change issue from Steinbach and noting that his counsel "appear[ed] . . . prepared" to proceed, declined to dismiss the motion but instead rescheduled the hearing to a later date to allow additional time for Steinbach to prepare his case. As a result, it is difficult to see how Steinbach could have been prejudiced by service of the motion six, rather than eight, days prior to the hearing; and he does not argue that he was.

Nor does he contend that Gustafson's motion was filed later than "one year after the judgment was

---

[1] At one point during the hearing, the trial court remarked that "it would be in the best interest of the child to have the name of Steinbach." The subsequent written order implementing its decision, however, contains no such reference.

[2] Because of intervening holidays, secs. 801.15(4) and (5), Stats., would add three days to the normal five-day requirement for service of motion papers.

entered" within the meaning of sec. 806.07(2), Stats.[3] His complaint seems to be that because the judgment was not entered until several weeks after the trial, the motion should be considered untimely because the *trial* took place more than one year prior to Gustafson's motion. The statute, however, runs from the entry of judgment, not from the date of trial. Steinbach has offered no authority to the contrary and has not persuaded us that the trial court erred in declining to dismiss Gustafson's motion as untimely.

## II.  Erroneous Exercise of Discretion

As we are able to discern it, Steinbach's argument appears to be that the trial court exceeded its discretion in reopening the judgment because, in doing so, it considered only its legal authority to order the name change and did not consider "whether . . . the best interests of the child would be served by reopening the judgment." In so arguing, he relies on *Johnson v. Johnson*, 157 Wis. 2d 490, 500, 460 N.W.2d 166, 170 (Ct. App. 1990), where we said that, in considering whether to reopen the custody provisions of a divorce judgment on grounds of misrepresentation under the "catch-all" provisions of sec. 806.07(1)(h), Stats.,[4] the child's interest would be "highly relevant" to the inquiry.

---

[3] Section 806.07(2), Stats., states in pertinent part that a motion to reopen a judgment "shall be made . . . not more than one year after the judgment was entered." Section 806.06(1)(b), Stats., provides that a judgment is "entered when it is filed in the office of the clerk of court."

[4] After listing several specific grounds for reopening a judgment, sec. 806.07(1)(h), Stats., states that, "upon such terms as are just, the court may relieve a party . . . from a judgment . . . for . . . [a]ny other reasons justifying relief from the operation of the judgment."

184

This, of course, is not a custody proceeding where the child's interests are made paramount by statute. *See, e.g.*, sec. 767.24(5), Stats. It also appears that the parties had been disputing Gustafson's right to give her name to the child for several weeks prior to the motion to reopen. As we have noted above, Steinbach had filed a contempt motion on the same subject several days before the first hearing on Gustafson's motion. At the initial hearing, the trial court expressed doubts as to its authority to order the name change in the first place and, considering the issue to be one of law, recessed the hearing to allow Steinbach time to prepare a response rather than dismissing the proceeding only to put Gustafson through the expense of re-filing and re-serving her motion. We note, too, that Steinbach filed a brief with the court at the first hearing addressing the merits of the court's authority to order the change.

The limited scope of our review of discretionary rulings is well settled. Generally, "[w]e will not reverse a discretionary determination by the trial court if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision." *Prahl v. Brosamle*, 142 Wis. 2d 658, 667, 420 N.W.2d 372, 376 (Ct. App. 1987). Indeed, "[b]ecause the exercise of discretion is so essential to the trial court's functioning, we generally look for reasons to sustain discretionary determinations." *Schneller v. St. Mary's Hosp.*, 155 Wis. 2d 365, 374, 455 N.W.2d 250, 254 (Ct. App. 1990), *aff'd*, 162 Wis. 2d 296, 470 N.W.2d 873 (1991).

To determine whether the trial court properly exercised its discretion in a particular matter, we look first to the court's on-the-record explanation of the rea-

sons underlying its decision. And if that explanation indicates that the court looked to and "considered the facts of the case and reasoned its way to a conclusion that is (a) one a reasonable judge could reach and (b) consistent with applicable law, we will affirm the decision even if it is not one with which we ourselves would agree." *Burkes v. Hales*, 165 Wis. 2d 585, 590, 478 N.W.2d 37, 39 (Ct. App. 1991) (footnote omitted).

The trial court considered Steinbach's arguments and explained its reasons for granting a continuance rather than dismissing the proceeding. It expressed its doubts as to the existence of legal authority to order the name-change in the divorce judgment, and it adjourned the hearing to a later date in order to give Steinbach additional time to prepare to argue that issue. That is an appropriate, adequately explained exercise of discretion, and we will not disturb the court's ruling.

### III. Constitutionality of Sec. 69.14(1)(f)1.b, Stats.

Steinbach next argues that the statute under which Gustafson named the child, sec. 69.14(1)(f)1.b, Stats., violates the equal protection provisions of the fourteenth amendment to the United States Constitution. The statute provides that:

> If the mother of a [child] . . . is married to the father of the [child] at any time from . . . conception to . . . birth . . . and the mother is separated or divorced from the father . . . at the time of birth, the given name and surname which the parent . . . with actual custody enters . . . on the birth certificate shall be the [child's] given name and surname . . ., except that if a court has granted legal custody of the [child], the given name and surname which the person with legal custody enters . . . on the birth

186

certificate shall be the given name and surname [of the child]. *Id.*

Steinbach points to another requirement in the statute that the birth certificate must be filed within five days of birth[5] and argues that because "in ninety-nine out of one hundred cases the mother having just given birth" will be the parent in custody of the child, she "will be the one naming [it]." He contends that this gives a "preference to the female sex to name the child" and thus denies a separated or divorced father equal protection of the law. We do not see sec. 69.14(1)(f)1.b, Stats., as creating a gender preference for the mother.

Initially, we are guided in our inquiry by the basic principle that statutes are presumed to be constitutional, and that one challenging the validity of a law must prove unconstitutionality beyond a reasonable doubt. *Employers Health Ins. Co. v. Tesmer*, 161 Wis. 2d 733, 737, 469 N.W.2d 203, 205 (Ct. App. 1991). It is a "heavy" burden, *id.*, for we will sustain a statute against such a challenge "if there is any reasonable basis for the exercise of legislative power." *State v. Hermann*, 164 Wis. 2d 269, 281, 474 N.W.2d 906, 911 (Ct. App. 1991). Thus:

> It is insufficient to merely establish doubt as to an act's constitutionality nor is it sufficient to establish the act is probably unconstitutional. This court indulges every presumption [of constitutionality] and will sustain the law if at all possible. If any doubt exists as to a law's unconstitutionality, it will

[5] Section 69.14(1)(a), Stats., states that "a certificate of birth for every birth which occurs in this state shall be filed . . . within 5 days after the birth and shall be registered under this subchapter."

be resolved in favor of its validity. *Quinn v. Town of Dodgeville*, 122 Wis. 2d 570, 577, 364 N.W.2d 149, 154 (1985).

We recognize that statutes in other states mandating giving the child the father's name, or giving the father the sole right to name the child, have been — quite appropriately, we think — struck down. *See O'Brien v. Tilson*, 523 F. Supp. 494, 496 (E.D. N.C., 1981) (North Carolina statute requiring children born of married parents to be given father's surname held unconstitutional); *Schiffman v. Schiffman*, 620 P.2d 579, 583 (Cal. 1980) (California statute giving father sole right to name child held unconstitutional).

■ We see no such defect in sec. 69.14(1)(f)1.b, Stats. We believe the statute is gender-neutral. It does not state or create a sexual preference; it simply provides that in instances where the parents were married at the time of conception, but were divorced or separated at the time of birth, the parent with legal custody at the time the certificate is prepared may enter the name or, if legal custody has not been determined, the parent with "actual custody" may do so.

And while it may be true that in many, if not most, instances the mother will be the person with "actual" physical custody of the child in the days following its birth, "the Fourteenth Amendment guarantees equal laws, not equal results." *Personnel Adm'r of Massachusetts v. Feeny*, 442 U.S. 256, 273 (1979). There appears to be no impediment in Wisconsin to a father seeking and obtaining either sole or joint legal custody of a child prior to birth. Wisconsin law provides for actions to determine custody, and since the statute granting that right, sec. 767.02(1)(e), Stats., contains no indication that it would not apply to determining custody of

188

yet-to-be-born children, the person with legal custody of the child at birth could be either parent or both. Thus, should a father in a situation such as this desire the right to name the child, or exercise other rights of legal custody, he could seek a custody determination prior to the child's birth. And, were he to be successful, sec. 69.14(1)(f)1.b, Stats., would empower him to enter the child's name on the certificate.[6] We thus reject Steinbach's argument that the statute states an unconstitutional preference for the mother.

*By the Court.*—Orders affirmed.

SUNDBY, J. *(dissenting).* "There be of them, that have left a name behind them, that their praises might be reported." THE APOCRYPHA (THE HIDDEN BOOKS), *Ecclesiasticus* 44:7–9. Marvin Steinbach seeks to have his son, Brandon Arthur, bear his name. The guardian ad litem recommended that it was in Brandon's best interest that he bear his father's surname. The trial court concluded that it was in Brandon's best interest to have his father's surname.[1] However, the trial court concluded, erroneously I believe, that sec. 69.14(1)(f)1.b, Stats., gave Brandon's mother the right to select Brandon's surname. I agree that the mother had that right in the first instance; however, the trial

[6] In this case, rather than seek such a determination, Steinbach agreed to entry of the first temporary order providing that any custody order would be postponed until after the child's birth. Indeed, as we have noted above, it appears that at the time of the child's birth, he was not prepared to concede that he was the child's father.

[1] There is much to support a finding that it is in the best interest of a child to bear the surnames of both parents. The issue here, however, is the authority of the court to select the father's surname.

court had the power upon determination of Brandon's paternity to select Brandon's surname if that was in his best interest. I therefore respectfully dissent.

Marvin Steinbach and Joyce Gustafson were married June 3, 1989. Joyce took Marvin's surname as hers. The parties separated less than a month after their marriage. Marvin began this action for divorce September 5, 1989.

On November 27, 1989, the court filed an order approving the parties' stipulation that Joyce was pregnant and that custody and physical placement of the unborn child would remain open until the child was born. When the child was born, Joyce gave Brandon her surname pursuant to sec. 69.14(1)(f)1.b, Stats. At Marvin's request the parties and the child submitted to blood tests to determine Brandon's paternity. On September 19, 1990, the American Red Cross reported that Marvin could not be excluded as Brandon's father and that "paternity is extremely likely." Marvin thereafter acknowledged paternity.

Although the parties resolved many issues by stipulation, they could not agree on Brandon's surname. In the May 6, 1991 judgment of divorce, the trial court ordered that Brandon's surname be changed from Gustafson to Steinbach. However, Joyce failed to change Brandon's name and on April 24, 1992, Marvin filed a motion with the court to enforce the judgment by finding Joyce in contempt and imposing remedial sanctions upon her. Joyce then moved the court under sec. 806.07(1)(a), (g), and (h), Stats., to reopen the divorce judgment to delete that part of the judgment changing Brandon's surname. The trial court granted Joyce's motion to reopen and concluded that it lacked the power to change Brandon's surname, although it remained of the opinion that such change was in Bran-

don's best interest. On June 19, 1992, the court entered its order finding that it had no authority to include a provision changing Brandon's surname in the divorce judgment. The trial court concluded that Joyce was the only person who could name the parties' minor child.

It is ironic that if Marvin had fathered Brandon out of wedlock and then married Joyce, the trial court, upon a determination of paternity, would have had clear statutory authority to give Brandon the father's surname. *See* sec. 767.60, Stats. Because Marvin was married to Joyce, but separated from her at the time of Brandon's birth, the statutory trail of trial court authority to name Brandon is less clear. However, it was clearly error for the trial court to conclude that sec. 69.14(1)(f)1.b, Stats., precludes the trial court from changing the child's surname when it determines paternity.

Section 69.14, Stats., deals only with registration of births.[2] Section 69.14(1)(f)1.b, Stats., provides:

> If the mother [Joyce] of a registrant [Brandon] of a birth certificate under this section is married to the father [Marvin] of the registrant at any time from the conception to the birth of the registrant and the mother is separated or divorced from the father of the registrant at the time of birth, the given name and surname which the parent of the registrant with actual custody enters for the registrant on the birth certificate shall be the given name and surname filed and registered on the birth certificate, except that if a court has granted legal custody of the registrant, the given name and sur-

---

[2] Chapter 69, Stats., deals only with the collection of vital statistics. Section 69.14, Stats., attempts to anticipate every circumstance which could exist when a child is born and provide for the naming of the child solely to have a record of the birth.

> name which the person with legal custody enters for the registrant on the birth certificate shall be the given name and surname filed and registered on the birth certificate.

Because this provision refers to "legal custody," as well as "actual custody," I infer that the legislature intended the term "actual custody" to refer to the parent having physical custody of the child. Of course, this provision gives the mother of the child the absolute right to initially determine the child's given and surname because she is obviously the parent who will have "actual custody" of the child at the time of birth. The very arbitrariness of this statute lends weight to my conclusion that sec. 69.14(1)(f)1.b, is merely a record facilitating statute.

Neither the trial court nor this court looked beyond sec. 69.14(1)(f)1.b, Stats., to determine whether statutory authority exists for a court to change a child's given and surname. Such authority does, however, exist. While the statutory trail of authority is tortuous, it is not obscure. Section 69.15, Stats., is entitled "Changes of fact on birth certificates." Subsection (1) provides:

> The state registrar may change information on a birth certificate registered in this state which was correct at the time the birth certificate was filed under a court . . . order issued in this state . . . if: (a) the order provides for an adoption, name change or name change with sex change or establishes paternity . . . .

Subsection (3) is entitled "Paternity." Paragraph (3)(a) provides:

If the state registrar receives an order under sub. (1) which establishes paternity . . . the state registrar shall do the following, as appropriate:

. . . .

4. If the order provides for a change in the child's given name or surname or both, enter the name indicated on a new birth certificate . . . or on the original birth certificate . . . except that if the surname of the child under 7 years of age is changed, the state registrar shall prepare a new certificate under sub. (6).

Thus, it is clear that the legislature contemplated that an order establishing paternity may provide for a change in the child's given name or surname or both. Plainly, we must look to the procedures for the establishment of paternity to find the authority for the circuit court to change the child's given or surname.

Paternity is determined under secs. 767.45 to 767.60, Stats. These statutes provide for an independent civil action to determine paternity. However, paternity may be determined in any action in which paternity is an issue, even if the action was not begun for that purpose. In an action for divorce, the paternity of a child may be questioned.

Section 767.45(1), Stats., is not limited to actions brought for the purpose of determining paternity: "The following persons may bring an action *or motion* for the purpose of determining the paternity of a child . . . ." (Emphasis added.) An action brought to determine paternity may result in a judgment. However, if a motion is brought to determine paternity in an underlying action brought for a different purpose, the court may enter an order determining paternity. Section 767.51(1), Stats., provides: "The judgment *or order* of the court determining the existence or nonexistence of

paternity is determinative for all purposes." (Emphasis added.) Section 767.51, Stats., does not deal specifically with the change of name of the child. However, sec. 767.51(3), Stats., provides: "The judgment or order may contain any other provision directed against the appropriate party to the proceeding concerning . . . any other matter in the best interest of the child." I believe the "best interest" of the child includes naming the child.

Other jurisdictions with similar statutes have explicitly determined that ordering a name change is a matter in the best interest of a child. OHIO REV. CODE ANN. § 3111.13(C) (Baldwin 1992), states:

> The judgment or order [determining the existence or nonexistence of a parent and child relationship] may contain any other provision directed against the appropriate party to the proceeding, concerning . . . any other matter in the best interest of the child.

The Ohio Supreme Court has held that: "[P]ursuant to R.C. 3111.13(C), a court of common pleas may determine the surname by which the child shall be known after establishment of the existence of the parent and child relationship, and a showing that the name determination is in the best interest of the child." *Bobo v. Jewell*, 38 Ohio St. 3d 330, 334, 528 N.E.2d 180, 184 (1988).

Likewise, WASH. REV. CODE § 26.26.130(3) (1991), provides:

> The judgment and order [in a paternity proceeding] shall contain other appropriate provisions directed to the appropriate parties to the proceeding, concerning . . . any other matter in the best interest of the child.

The Washington Supreme Court has determined: "The court in its discretion may order a change of the name when found to be in the best interests of the child." *Daves v. Nastos*, 105 Wash. 2d 24, 29–30, 711 P.2d 314, 318 (1985).

The power of a court to grant relief from a judgment under sec. 806.07, Stats., is discretionary. Here, the court granted relief from the judgment because it erroneously concluded that it lacked the power it had exercised in the divorce judgment to change Brandon's surname. Because the circuit court acted under a mistake of law, it erroneously exercised its discretion. *State v. Hutnik*, 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968). I would reassure the trial court that it was correct in its first action and reverse the order amending the divorce judgment.