John L. HUGHES, Plaintiff-Respondent,

v.

CHRYSLER MOTORS CORPORATION, Defendant-Appellant.†

Court of Appeals

*No. 93–0208. Oral argument February 10, 1994.—Decided September 29, 1994.*

(Also reported in 523 N.W.2d 197.)

†Petition to review granted.

3

For the defendant-appellant the cause was submitted on the briefs of *Jeffrey S. Fertl* and *Susan R. Tyndall* of *Hinshaw & Culbertson* of Milwaukee, and orally argued by *Susan R. Tyndall*.

For the plaintiff-respondent the cause was submitted on the brief of *Edward Grutzner* of *Grutzner, Holland & Vollmer, S.C.* of Beloit, and orally argued by *Edward Grutzner*.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

DYKMAN, J. Chrysler Motors Corporation appeals from a judgment awarding John L. Hughes twice the amount of his pecuniary loss as well as costs and attorney's fees for Chrysler's failure to replace his 1990 Dodge Caravan as required by the Wisconsin Lemon Law, § 218.015, STATS.[1] Chrysler argues that: (1) Hughes waived his right to recover twice his pecuniary loss; (2) the trial court erred in determining Hughes's pecuniary loss under § 218.015(7); (3) the trial court erred in construing Chrysler's acceptance of Hughes's offer of settlement as a counteroffer; and (4) the trial court erroneously exercised its discretion in awarding attorney's fees. We reject these contentions, and therefore affirm.

---

[1] Section 218.015(7), STATS., provides, in pertinent part: "In addition to pursuing any other remedy, a consumer may bring an action to recover for any damages caused by a violation of this section. The court shall award a consumer who prevails in such an action twice the amount of any pecuniary loss, together with costs, disbursement and reasonable attorney fees, and any equitable relief the court determines appropriate."

## BACKGROUND

Hughes purchased a new Dodge Caravan on January 11, 1990. On seven separate occasions during his first year of ownership, Hughes took the vehicle to a dealer to repair transmission defects. When the dealer's repair efforts proved unsuccessful, Hughes retained counsel. On June 19, 1991, counsel wrote to CT Corporation Systems, Chrysler's registered agent in Wisconsin, demanding that Chrysler replace Hughes's car within thirty days with a "comparable new motor vehicle . . . without any further charge to him." *See* § 218.015(2)(b)2.a and (c), STATS.

After receiving no response, counsel contacted Chrysler on July 29, 1991, and at Chrysler's request, mailed it a copy of the June 19 letter. Upon receipt of the letter, Chrysler made four unsuccessful attempts to reach counsel by telephone before discovering on August 22, that Hughes had filed suit two days earlier. By letter dated August 23, 1991, Chrysler stated it would replace Hughes's vehicle without any charge for the model year upgrade or the mileage on his vehicle.

On March 4, 1992, the parties stipulated that Hughes's car did not conform to express warranties covering the vehicle, and that the car had been out of service for at least thirty days, in aggregate, within one year of purchase due to warranty nonconformities. They stipulated that the only issues remaining were: (1) whether Chrysler complied with § 218.015(2)(c), STATS., when it offered to replace Hughes's vehicle sixty-five days after Hughes made his demand; (2) whether Hughes was entitled to recover twice the amount of pecuniary loss or reasonable attorney's fees under § 218.015(7); (3) the amount of damages and attorney's fees; and (4) whether Hughes mitigated his damages.

The trial court granted Hughes's motion for summary judgment. The court awarded Hughes twice the amount of Hughes's pecuniary loss of $15,999, or $31,999, and left costs, reasonable attorney's fees, and prejudgment interest to be determined later. Additionally, the court would consider Chrysler's contention that Hughes was bound by its acceptance of a settlement offer on April 8, 1992.

After the hearing, the trial court held that Chrysler's response to Hughes's offer of settlement was a counteroffer. The court then entered judgment for Hughes in the amount of $74,371, which included $35,141 in attorney's fees and $4,117 in prejudgment interest accruing from the date of Hughes's first offer of settlement on November 13, 1991.

## STANDARD OF REVIEW

To determine the appropriate method for calculating Hughes's pecuniary loss, and whether Hughes waived his right to recover twice the amount of such loss, we must construe § 218.015(6) and (7), STATS. Statutory interpretation is a question of law which we review *de novo*. *State ex rel. Frederick v. McCaughtry*, 173 Wis. 2d 222, 225, 496 N.W.2d 177, 179 (Ct. App. 1992). In construing a statute, our purpose is to discern the legislature's intent and give it effect. *Id.* The first step is to examine the statute's language, and, absent ambiguity, it is our duty to give the language its ordinary meaning. *Id.* at 225-26, 496 N.W.2d at 179. If the language is unclear we will attempt to ascertain legislative intent by examining the scope, history, context, subject matter and purpose of the statute. *Id.* at 226, 496 N.W.2d at 179.

9

An award of attorney's fees is committed to the trial court's sound discretion, and we will not disturb the court's decision absent an erroneous exercise of that discretion. *Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 204, 496 N.W.2d 57, 62 (1993). The trial court properly exercises its discretion when it applies the appropriate legal standard to the facts of record and, using a logical reasoning process, draws a conclusion that a reasonable judge could reach. *Id.*

## WAIVER

Chrysler argues that when Hughes sent another copy of his June 19 letter on August 2, he effectively granted Chrysler an extension until September 1, 1991, to replace his car and waived any existing claim under § 218.015(2)(c), STATS., for Chrysler's failure to do so within thirty days of his "initial" demand, or by July 19, 1991. Chrysler argues that because it remedied its earlier default by agreeing to replace the vehicle within thirty days of the renewed demand, Hughes was not entitled to recover double damages.

The trial court rejected this argument on the basis that under § 218.015(6), STATS., "[a]ny waiver by a consumer of rights under this section is void." Chrysler contends that the trial court's "too-literal" construction of § 218.015(6) "thwarts the very purpose" of the lemon law statute and is contrary to the public policy favoring settlement of claims. However, when statutory language is as unequivocal as that found in § 218.015(6), we are bound to give the language its ordinary meaning. *Frederick*, 173 Wis. 2d at 225-26, 496 N.W.2d at 179. We conclude that Hughes did not waive his claim.

10

## SETTLEMENT OFFER

On April 4, 1992, counsel sent Chrysler a two-page document containing an offer of settlement. The first page states in relevant part:

> The plaintiffs offer to accept in full settlement of this action the amounts as computed on the exhibit attached, of $29,000.00, with costs of $88.50. *plus* Plaintiff's attorney fees are to be determined and allowed by the court upon the conclusion of the case *of $20,000.00, in all $49,000.00, with costs.*

(Emphasis indicates handwritten words.)

An exhibit attached to the offer of settlement provides detailed computations of Hughes's pecuniary loss and the costs incurred in bringing this action. At the bottom of the page, the following typewritten words appear:

> Offer of settlement: $29,000.00
> Plaintiff's attorneys fees are to be determined and allowed by the court upon the conclusion of the case.

Chrysler's counsel responded by letter dated April 8, 1992, stating: "Pursuant to your offer of settlement, my client has authorized me to offer you $29,000.00, plus costs of $88.50."

Chrysler claims that the attached exhibit is an alternative settlement offer, and its acceptance of the alternative offer made its terms binding on both parties. Consequently, the trial court erred in awarding interest at twelve percent per annum under § 807.01(4), STATS.,[2] between the date of the first settle-

---

[2] Section 807.01(4), STATS., provides in part: "If there is an offer of settlement by a party . . . which is not accepted and the party recovers a judgment which is greater than or equal to the

ment offer, November 13, 1991, and final judgment on December 9, 1992. Moreover, Chrysler concludes that the issue of attorney's fees must be reexamined in light of the fact that a settlement was reached. We disagree.

We construe an ambiguous contract against the drafting party, but it is "equally clear that where written provisions of a contract are inconsistent with printed provisions, an interpretation is preferred which gives effect to the written provisions." *Kuranda v. O'Connor*, 23 Wis. 2d 51, 57, 126 N.W.2d 568, 571 (1964). Under the latter principle, Hughes's offer is construed as expressing his willingness to compromise his claim for $49,088.50. We reject the alternative offer argument.

Chrysler also contends that *Cue v. Carthage College*, 179 Wis. 2d 175, 507 N.W.2d 109 (Ct. App. 1993), supports its "alternative offer" argument. In *Cue*, 179 Wis. 2d at 179, 507 N.W.2d at 111, we determined that two separate settlement offers were too ambiguous to trigger statutory sanctions. Since we conclude that Hughes made only one settlement offer, the holding in *Cue* is inapplicable. Accordingly, we agree with the trial court that Chrysler's response incorporating terms different from those contained in Hughes's offer was a counteroffer. *See Todorovich v. Kinnickinnic Mut. Loan & Bldg. Ass'n*, 238 Wis. 39, 42, 298 N.W. 226, 227 (1941) (letter to offeror that contained varying terms did not form a contract for the sale of land).

---

amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid."

## PECUNIARY LOSS

In awarding twice the amount of Hughes's pecuniary loss, the trial court accepted Hughes's calculations without modification. The following items totaling $15,999.31 were included: (1) the cash price of the vehicle less the rebate, $14,440; (2) sales tax, $722.75; (3) license and title fees, $60; (4) service contract, $495; (5) credit life insurance, $28.55; (6) disability insurance, $54.82; (7) finance charges/interest, $326.21; and (8) a deduction for a mileage allowance of 889 miles, $128.02.

Chrysler argues that the trial court misconstrued the meaning of pecuniary loss within § 218.015(7), STATS. Chrysler further contends that it defeats the purpose of the lemon law for a claimant to recover automatically twice the price of the vehicle when a new car is not provided by the manufacturer within thirty days. According to Chrysler, Hughes's recovery should be limited to the "actual pecuniary loss" he suffered during the thirty-five-day delay before Chrysler agreed to replace his car. Chrysler does not posit a definition or a method of calculating "actual pecuniary loss" in its briefs. At oral argument, Chrysler suggested that pecuniary loss is the loss of use of a nondefective vehicle and may be measured by the car rental payments the consumer made while waiting for the replacement vehicle.

■

In *Nick v. Toyota Motor Sales, U.S.A.*, 160 Wis. 2d 373, 383, 466 N.W.2d 215, 219 (Ct. App. 1991), we held that when a manufacturer wrongfully refuses a consumer's request for a refund under the lemon law, the consumer suffers pecuniary loss in the amount of the refund he or she should have received. Thus, pecuniary loss includes the purchaser's down payment, payments of principal and interest on the loan to finance the

purchase, sales tax, and point-of-sale and collateral costs. However, *Nick* differs from the case before us. The consumer in *Nick* demanded a refund rather than a replacement, and the manufacturer never agreed to provide the refund.

Despite these distinctions, we conclude that the *Nick* definition of pecuniary loss should apply to the facts of this case for two reasons. First, it is consistent with the purposes of the lemon law. Those purposes are to "increas[e] the bargaining power of individual consumers at the pre-court stage," and to provide consumers with the incentive to bring suit against the automobile manufacturers which "not only have the wealth and will to exhaust an individual litigant, but also control vast amounts of technical expertise on the very mechanical aspects the consumer is challenging." Stephen J. Nicks, *Lemon Law II*, WISCONSIN BAR BULLE-TIN (State Bar of Wis., Madison, Wis.), July 1987, at 48. Second, the consumer incurs the same expenditures toward ownership regardless whether he or she requests a refund or a replacement of the defective vehicle.[3]

---

[3] The *Nick* rule can produce anomalous results. For example, assuming two consumers purchase identical cars for $20,000 each, and one borrows $16,000 to buy the car while the other pays entirely with his or her own funds, the former's recovery would be $8,000 and the latter consumer's recovery would be $40,000 (assuming no other point of sale or collateral costs or loan payments). As Stephen J. Nicks pointed out in *A New Twist on Lemon Law*, WISCONSIN LAWYER, (State Bar of Wis., Madison, Wis.), Oct. 1991, at 49, the manufacturer's incentive to honor a lemon law claim would depend on how much the consumer has already paid. But the legislature could validly make the policy determination that the consumer's

Chrysler asserts that there should be a good faith exception in cases where the manufacturer is willing to comply with the consumer's request but inadvertently fails to do so within thirty days as required by § 218.015(2)(c), STATS. Otherwise, once the thirty days have elapsed, the manufacturer has no incentive to settle the claim promptly since it is already liable for twice the purchase price. However, Chrysler's proposed definition of pecuniary loss, rental value for thirty-five days, which it estimated at oral argument to be about $9 or $10 per day, provides no incentive to the manufacturer to make efforts towards early settlement once thirty days have passed. Chrysler's definition also thwarts the purpose of the remedy which is to make manufacturers respond within that thirty-day period. The other statutory remedies, including the recovery of reasonable attorney's fees, costs and any equitable relief the court deems appropriate, also sanction those manufacturers who hold out indefinitely.

## ATTORNEY'S FEES

Chrysler argues the trial court erroneously exercised its discretion when it awarded Hughes $35,141 in attorney's fees. According to Chrysler, counsel spent an inordinate number of hours on the case, the time spent on alternative claims and work done by counsel before the statute was violated should have been segregated from the award, and the hourly fee and total amount billed by counsel far exceeded that charged by other attorneys doing the same type of work.

recovery was limited to twice the amounts applied to the ownership of the vehicle and, therefore, we will not disturb such a determination.

The trial court properly exercises its discretion when it applies the appropriate legal standards to the facts of record and, using a logical reasoning process, draws a conclusion that a reasonable judge could reach. *Village of Shorewood*, 174 Wis. 2d at 204, 496 N.W.2d at 62. Section 218.015(7), STATS., permits a court to award reasonable attorney's fees to the party that prevails in an action brought for a violation of the lemon law. The supreme court has determined that the factors set forth in Supreme Court Rule 20:1.5(a), should be used when determining the reasonableness of a fee.[4] *Village of Shorewood*, 174 Wis. 2d at 204, 496 N.W.2d at 62.

The trial court first considered the time and labor spent by counsel and found that it "was in fact expended, and . . . necessary to a vigorous prosecution of the claim." The trial court concluded that the high number of hours spent on the case was reasonable in light of the fact that counsel was "operating in a relatively new and evolving area of the law . . . ." In *Siegel v. Leer, Inc.*, 156 Wis. 2d 621, 632, 457 N.W.2d 533, 538 (Ct. App. 1990), we stated that when dealing with a law

---

[4] Supreme Court Rule 20:1.5(a), which governs the professional conduct for attorneys, provides that the following factors be considered in determining the reasonableness of a fee:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

that has not been frequently tried, "thorough research and careful draftsmanship . . . is the mark of quality — not inordinate — lawyering." Our review of the record shows that the trial court did not erroneously exercise its discretion in finding that the time spent by counsel on this case was reasonable.

Chrysler argues that the lemon law statute was designed to be a simple mechanism through which consumers could easily enforce their rights against manufacturers and thus it is anomalous for counsel to have spent so much time on this case. But, as this litigation shows, not all cases are simple. Thus, while counsel did spend a significant amount of time preparing this case, we cannot conclude that such time was excessive.[5]

The trial court also awarded fees accrued for time spent on breach of warranty claims finding these claims "inextricably intertwined" with the lemon law violations. The trial court reasoned that counsel "would not have prosecuted this case properly if he had not made those claims initially and prepared on those claims." A court should award attorney's fees for time spent on activities that are reasonably necessary to the

---

[5] Chrysler makes much of the fact that since it was willing to settle the claim, the trial court should have reduced the attorney's fees awarded. We disagree. This court recognizes the importance of encouraging settlement between parties. However, settlement negotiations frequently break down. Parties must therefore be prepared to move forward. This court cannot require that when settlement negotiations are occurring, the parties must cease other legal efforts. This would be unfair to the parties and could discourage settlement. And, the fact that the case was ultimately settled does not render counsel's efforts superfluous. *Siegel*, 156 Wis. 2d at 632, 457 N.W.2d at 538.

plaintiff's claims. *Chmill v. Friendly Ford-Mercury*, 154 Wis. 2d 407, 417-18, 453 N.W.2d 197, 201 (Ct. App. 1990) (denying recovery for time spent on a garnishment action to enforce the original judgment since it was a separate later action). Section 218.015(7), STATS., permits recovery of reasonable attorney's fees to any consumer that prevails in a lemon law action but does not limit that recovery to time spent only on the lemon law claim. The trial court recognized that in pursuing a case against a defendant, counsel will pursue several causes of action and that often, time spent on one cause of action will be relevant to another. We cannot say that the trial court erroneously exercised its discretion when it awarded attorney's fees for work done which included the warranty claims.

The trial court also awarded fees for time spent on the case prior to when a violation of the lemon law action accrued. Section 218.015(7), STATS., permits a court to award attorney's fees to the party that prevails in a claim for a violation of the lemon law. Section 218.015(2)(c), provides that a manufacturer violates the statute when it fails to provide the consumer with either a refund or a replacement car within thirty days of the consumer's demand. Chrysler argues that any fees accrued on this case prior to the expiration of that thirty-day period should not be recoverable. We disagree.

It is reasonable to award attorney's fees for time spent on demand letters and similar work performed before the thirty days have expired. These activities are usually directly related to the lemon law claim and recovery of fees spent on such activities ensure that the auto manufacturers will be diligent in responding to the consumer's claims. The attorney's fees provision is

intended to give manufacturers an incentive to promptly reply to a consumer's complaint. Recovery of fees for time spent prior to the expiration of that thirty days is consistent with that goal.[6] Auto manufacturers who timely respond to baseless lemon law claims will not have fees awarded against them. And, attorneys who spend time prior to the time a violation occurs risk non-recovery of their fees from an automobile manufacturer if the manufacturer timely agrees with the automobile owner's claim.

The trial court also carefully considered the rates charged by other lawyers in the same locality for lemon law cases. Hughes submitted affidavits showing that counsel's rate of $135 per hour was comparable to the rate charged by neighboring attorneys for lemon law cases. The trial court disregarded evidence offered by Chrysler showing that rates charged in other lemon law cases were lower, because the trial court was not made aware of the factors that were used to determine those rates. The fact that counsel needed more time to prepare the case than Chrysler argues was warranted does not necessarily mean the hourly rate should have been diminished. Chrysler does not disagree with the trial court's finding that counsel is a competent, able and experienced trial attorney. Our review is limited to whether the trial court exceeded it discretion since the

[6] Moreover, permitting Hughes to recover fees for time counsel spent on the claim prior to the expiration of the thirty-day period does not mean that any consumer may recover attorney's fees even though the manufacturer has not violated the statute. Section 218.015(7), STATS., allows recovery of reasonable attorney's fees only when there has been a violation of the statute. Thus, such consumers could never recover absent a violation.

trial court is in "an advantageous position to make a determination as to the reasonableness of a firm's rates . . . ." *Village of Shorewood*, 174 Wis. 2d at 206, 496 N.W.2d. at 63 (quoting *Standard Theatres, Inc. v. DOT*, 118 Wis. 2d 730, 747, 349 N.W.2d 661, 671 (1984)). Thus, the trial court did not erroneously exercise its discretion by determining that $135 was a reasonable hourly rate.

This court does not decide whether it would have made the same award, but instead

> look[s] first to the court's on-the-record explanation of the reasons underlying its decision. And if that explanation indicates that the court looked to and "considered the facts of the case and reasoned its way to a conclusion that is (a) one a reasonable judge could reach and (b) consistent with applicable law, we will affirm . . . ." *Burkes v. Hales*, 165 Wis. 2d 585, 590, 478 N.W.2d 37, 39 (Ct. App. 1991) (footnote omitted).

*Steinbach v. Gustafson*, 177 Wis. 2d 178, 185-86, 502 N.W.2d 156, 159 (Ct. App. 1993). We are disturbed that Hughes's counsel appears to have only slightly modified a complaint that he filed in a previous lawsuit against General Motors Corporation, and yet claims to have taken 19.9 hours to do so. And, we note that the fees charged and the total hours spent on the case are unusually high. The trial court's award approaches the outermost limits of one we would affirm. Nonetheless, the trial court found counsel's]fees and hours spent to be reasonable[7] and our scope of review is highly defer-

---

[7] The trial court also considered the amount involved in the claim and the results obtained, the time limits imposed by the client, the nature and length of the professional relationship

ential. The trial court believed counsel when he testified as to the hours he spent on this case. The trial court is the ultimate arbiter of witness credibility. *Village of Big Bend v. Anderson*, 103 Wis. 2d 403, 410, 308 N.W.2d 887, 891 (Ct. App. 1981). Thus, with misgivings, we defer to the trial court's discretionary decision.

*By the Court.*—Judgment affirmed.

EICH, C.J. (*dissenting*). As the majority opinion indicates, continuing problems with Hughes's car—purchased in January 1990 for $14,440—caused him to write to Chrysler on June 19, 1991, demanding that it be replaced without cost. And even though Chrysler, acknowledging that the car did not conform to its warranty, offered to replace it on August 23, 1991—admittedly, some thirty-five days beyond the thirty-day deadline contained in the "lemon law"—Hughes recovered $32,000 in damages, and his attorney received approximately $35,000 in fees. Chrysler, whose only "bad act" was its delay in agreeing to Hughes's demand—much of which was the result of Hughes's attorney's refusal to return the company's telephone calls while he was busy preparing the complaint in this action—is out $74,000. I do not share the majority's belief that such a result is mandated by the statute.

It is instructive, I think, to consider a more detailed chronology of these events. As indicated,

---

between the attorney and client, the experience, reputation and ability of the attorney, and the fact that this was a contingency fee agreement. The trial court also recognized that since this case involved substantial attention, Hughes's counsel would be precluded from taking other work. The trial court found that the fees charged were reasonable in light of these additional factors.

21

Hughes purchased the car in January 1990, and persistent transmission problems caused him to seek legal advice in mid-1991, which resulted in the June 19, 1991, letter to Chrysler. On July 29, 1991, ten days after expiration of the statutory deadline, Hughes's counsel telephoned a Chrysler service official, who requested a copy of the June 19 letter. A copy was sent on August 2 and, upon its receipt, Chrysler attempted to contact Hughes's attorney, placing calls to him on August 8, August 13, August 15, and August 21. Although messages were left in each instance, Hughes's attorney did not return any of the calls and, during this time, began drafting a complaint against Chrysler. On August 22, Hughes's attorney finally returned Chrysler's calls and, upon learning that the company was acknowledging the defects in the car and agreeing in full to his replacement demand, rejected the offer, telling Chrysler he had already filed the action.

Hughes's attorney proceeded with discovery and Chrysler eventually agreed to stipulate to its violation of the lemon law, leaving only questions of the amount of Hughes's pecuniary damages and attorney fees for decision by the court. Hughes's attorney never responded to the proffered stipulation, but instead sought to enforce his discovery requests. At the hearing on the discovery motions, the trial court, learning of Chrysler's offer, directed counsel to reduce it to writing. This was done and the agreement was eventually signed.

Hughes moved for summary judgment and the trial court granted the motion. The court awarded Hughes double damages under the statute, leaving his claim for attorney fees—ultimately for 248 hours of work billed by his lawyer—for resolution. Eventually,

the trial court allowed the claim for attorney fees in its entirety, deducting only 1.6 hours from the total request.

Where the manufacturer violates the lemon law by, among other things, failing to comply with the time deadlines, § 218.015(7), STATS., gives the consumer a cause of action for "damages *caused* by [the] violation," and goes on to describe those damages as "twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees . . .." (Emphasis added.)

To me, the result in this case goes well beyond both the language and the underlying purpose of the statute—both in the damages awarded to Hughes and the fees awarded to his attorney.[1] The statute does not exist to punish automobile dealers, or to enrich lawyers, but to "rectify the problem a new car buyer has when that new vehicle is a 'lemon.' " *Nick v. Toyota Motor Sales*, 160 Wis. 2d 373, 381, 466 N.W.2d 215, 218 (Ct. App. 1991). Plainly, it entitles the purchaser of a "lemon" to recover double the damages "*caused by*" the manufacturer's violation of the thirty-day refund requirements of the law. But I fail to see how Chrysler's violation—a thirty-five-day delay in *agreeing in full to Hughes's demand for a new car*—"caused" Hughes damages in the sum of the full value of the car plus more than six forty-hour weeks of his attorney's time at $135 per hour.

---

[1] In my opinion, Chrysler has made a good case that the trial court exceeded its discretion in awarding some $35,000 in fees to Hughes's attorney. Because, as indicated below, I would limit Hughes's damages to the fees and expenses he incurred only up to the point Chrysler acceded to his demand for a replacement car, it is unnecessary to discuss my disagreement with the trial court's decision on the fees.

I agree with Chrysler that, reading the statute, we are to "look to [its] commonsense meaning . . . to avoid unreasonable . . . results." *Sonnenburg v. Grohskopf*, 144 Wis. 2d 62, 66, 422 N.W.2d 925, 927 (Ct. App. 1988). In my opinion, the only damages caused by the violation were the expenses Hughes incurred up to the time Chrysler acknowledged the defect and offered to replace the car: his attorney fees and other expenses up to that point, doubled under the statute, and, of course, either replacement of the car or a refund of what he paid for it. Because I would reverse and remand for the trial court to determine damages within those limits, I respectfully dissent.